NO. 26-1690

# BRIEF FOR RESPONDENT MERIT SYSTEMS PROTECTION BOARD

---

UNITED STATES COURT OF APPEALS
FOR THE FEDERAL CIRCUIT

---

MAHADEVA SASEETHARRAN,

Petitioner,

v.

MERIT SYSTEMS PROTECTION BOARD,

Respondent.

---

PETITION FOR REVIEW OF A DECISION OF THE
MERIT SYSTEMS PROTECTION BOARD IN NO. SF-1221-24-0257-W-1

---

Respectfully submitted,

KATHERINE M. SMITH
Acting General Counsel

Stephen Fung
Attorney
Office of the General Counsel
Merit Systems Protection Board
1615 M Street, NW
Washington, DC 20419-0002
(771) 210-1577

DATE: September 10, 2026

## TABLE OF CONTENTS


**TABLE OF AUTHORITIES** .......... iii

**STATEMENT OF RELATED CASES** .......... v

**JURISDICTIONAL STATEMENT** .......... vi

**STATEMENT OF THE ISSUE** .......... 1

**STATEMENT OF THE CASE** .......... 2

- **I. Nature of the Case** .......... 2
- **II. Statement of Facts and Disposition Below** .......... 2
  - **A. Factual Background** .......... 2
  - **B. Procedural Background** .......... 4
    - **1. EEO and OSC Complaint** .......... 4
    - **2. MSPB Appeal** .......... 5
    - **3. Initial Decision** .......... 7
    - **4. Administrative Petition for Review** .......... 10
    - **5. Final Order** .......... 10

**SUMMARY OF ARGUMENT** .......... 11

**ARGUMENT** .......... 12

- **I. Standard of Review** .......... 12

**II. The Board Correctly Dismissed Petitioner's Appeal for Lack of Jurisdiction .......... 12**

**A. IRA Jurisdiction Standards .......... 13**

**B. Petitioner Failed to Make a Nonfrivolous Allegation of a Protected Disclosure of a Gross Waste of Funds ... 16**

**1. Petitioner's Allegation Lacked Sufficient Detail to Qualify as a Nonfrivolous Allegation .......... 17**

**2. Petitioner's Proffered Details Do Not Establish Jurisdiction .......... 19**

**CONCLUSION .......... 24**

## TABLE OF AUTHORITIES

**CASES**

*Carr v. Dep't of Defense*, 61 M.S.P.R. 172, 180-81 (1994) ........................ 14

*Forest v. Merit Sys. Prot. Bd.*, 47 F.3d 409, 410 (Fed. Cir. 1995) ............... 12

*Frederick v. Dep't of Justice*, 73 F.3d 349, 353 (Fed. Cir. 1996) ................ 13

*Frederick v. Dep't of Veterans Affairs*, 63 M.S.P.R. 563, 571 (1994) .... 16, 18

*Healy v. Dep't of Homeland Security*, 2024 WL 3251061, at *4 (M.S.P.B., June 28, 2024) .................................................................. 16

*Holman v. Department of the Army*, 2025 MSPB 2, at ¶ 12 (2025) ............... 9

*Jensen v. Dep't of Agriculture*, 104 M.S.P.R. 379, 385 (2007) .................... 15

*Kahn v. Dep't of Justice*, 528 F.3d 1336, 1341 (Fed. Cir. 2008) ................. 14

*Keefer v. Dep't of Agriculture*, 82 M.S.P.R. 687, 692 (1999) ................ 14, 18

*Lachance v. White,* 174 F.3d 1378, 1381 (Fed. Cir. 1999) ......................... 15

*Linder v. Dep't of Justice*, 122 M.S.P.R. 14, 22 (2014) .............................. 14

*McDonnell v. Dep't of Agriculture*, 108 M.S.P.R. 443, 447 (2008) ............ 14

*Mudd v. Dep't of Veterans Affairs*, 120 M.S.P.R. 365, 370 (2013) .............. 14

*Saseetharran v. Department of the Treasury*, MSPB Docket No. SF-1221-24-0257-W-1 .......................................................................................... 2

*Smith v. Department of Army*, 80 M.S.P.R. 311, 315 (1998) ................. 15, 18

*SmithKline Beecham Corp. v. Apotex Corp.*, 439 F.3d 1312, 1319 (Fed. Cir. 2006) ............................................................ 9, 17, 18

*Smolinski v. Merit Systems Protection Board*, 23 F.4th 1345, 1350 (Fed. Cir. 2022) ...................................................................... 13

*White v. Dep't of the Air Force*, 63 M.S.P.R. 90, 97 (1994) ....................... 16

*Yunus v. Dep't of Veterans Affairs*, 242 F.3d 1367, 1371 (Fed. Cir. 2001) ... 13

**STATUTES**

28 U.S.C. § 1295(a)(9) ..................... vi
5 U.S.C. § 2302(b)(8) ..................... 13, 14
5 U.S.C. § 7701 ..................... 12
5 U.S.C. § 7703 ..................... 12
5 U.S.C. § 7703(b)(1)(B) ..................... vi

**REGULATIONS**

5 C.F.R. § 1201.4(s) ..................... 13

## STATEMENT OF RELATED CASES

Respondent is not aware of any related cases currently or previously before this Court.

## **JURISDICTIONAL STATEMENT**

The Court has jurisdiction over this appeal pursuant to 5 U.S.C. § 7703(b)(1)(B) and 28 U.S.C. § 1295(a)(9).

NO. 26-1690

BRIEF FOR RESPONDENT MERIT SYSTEMS PROTECTION BOARD

---

UNITED STATES COURT OF APPEALS
FOR THE FEDERAL CIRCUIT

MAHADEVA SASEETHARRAN,

Petitioner,

v.

MERIT SYSTEMS PROTECTION BOARD,

Respondent.

---

PETITION FOR REVIEW OF A DECISION OF THE
MERIT SYSTEMS PROTECTION BOARD IN NO. SF-1221-24-0257-W-1

---

## STATEMENT OF THE ISSUE

Whether the Board correctly dismissed petitioner's appeal for lack of jurisdiction based on its determination that he failed to nonfrivolously allege that he made a protected disclosure of a gross waste of funds due to the lack of detail he included in his purported disclosure.

## STATEMENT OF THE CASE

### I. Nature of the Case

Petitioner, Mahadeva Saseetharran, seeks review of a February 18, 2026 final order of the Merit Systems Protection Board ("MSPB" or "Board") in a whistleblower Individual Right of Action ("IRA") appeal, in which the July 19, 2024 initial decision of an MSPB administrative judge ("AJ") became the final decision of the Board by operation of 5 C.F.R. § 1200.3(b). *Saseetharran v. Department of the Treasury*, MSPB Docket No. SF-1221-24-0257-W-1 (Initial Decision, July 19, 2024; Final Order, February 18, 2026). Appx001-025. The Board's Final Order stated that, due to the recusal of one of its two sitting members, the Board lacked a quorum to adjudicate the administrative petition for review. Appx020. The Board accordingly invoked 5 C.F.R. § 1200.3(b), under which the July 19, 2024 initial decision, which dismissed the appeal for lack of jurisdiction, became the final decision of the Board. Appx020.

### II. Statement of Facts and Disposition Below

#### A. Factual Background

Petitioner was hired by the Department of the Treasury ("agency") as a GS-13 Mathematical Statistician (Data Scientist) on November 22, 2021.

Appx036; Appx041. His appointment was subject to a one-year probationary period. Appx036; Appx305-306.

On April 7, 2022, petitioner e-mailed his third level supervisor, Barry Levine, to discuss the agency's exploration of new cloud software platforms, including Microsoft Azure. Appx113. In the e-mail, petitioner stated:

> "Thank you for approving the use of ICP. Despite being new, I navigated myself and learned of ICP, which is IBM's Cloud software, and capable of public and private cloud. This means IRS (or RAAS) already has something equivalent of AWS and/or Azure."

Appx113. Mr. Levine did not acknowledge, or respond to, petitioner's April 7, 2022 e-mail. Appx079.

At an undisclosed time after his April 7, 2022 e-mail, petitioner learned from Mr. Levine that the agency was developing a different cloud platform, known as "AML." Appx084. On May 18, 2022, the agency arranged for a presentation on Azure to approximately 50 agency employees, including Assistant Deputy Commissioner Theodore Setzer. Appx228; Appx261. The agency ultimately did not purchase the Azure platform. Appx084.

On May 31, 2022, petitioner met with his first level supervisor, Gene Mitchell, for his mid-year performance review. Appx084. During

the review, Mr. Mitchell asked petitioner "Do you know TIGTA?"[1] Appx084.

On November 4, 2022, the agency notified petitioner that it was terminating his probationary employment, effective November 10, 2022. Appx128-130. The agency stated it was terminating petitioner's employment because he failed to complete or demonstrate appropriate progress towards completion of his work assignments, failed to timely act on verbal and written requests from management to produce source code and documentation for his assignments, and despite verbal and written requests from management, continued to inappropriately direct written communications to senior managers and executives. Appx128-130.

### B. Procedural Background

#### 1. EEO and OSC Complaint

On November 9, 2022, petitioner contacted an Equal Employment Opportunity ("EEO") Counselor to complain that his termination was due to his race and national origin, as well as his reporting of harassment to management. Appx323.

[1] While there is no definitive indication in the record, the administrative judge presumed TIGTA referred to the Treasury Inspector General for Tax Administration, and petitioner has not taken any steps to correct that presumption in his brief. Appx007.

On March 23, 2023, petitioner filed a complaint of whistleblower reprisal with the Office of Special Counsel ("OSC"). Appx250-259. He alleged to OSC that his April 7, 2022 e-mail to Mr. Levine was a protected disclosure of a "gross waste of funds if Agency were to acquire the (additional) Microsoft Azure platform (and services)." Appx253-254. He further alleged to OSC that he disclosed to the agency that agency staff were violating the agency's anti-harassment policy. Appx039.

Petitioner argued to OSC that the agency retaliated against him for the April 7, 2022 e-mail regarding Azure, and for his disclosure about the anti-harassment policy. Appx039. He alleged the retaliatory acts were: being asked not to communicate directly with upper management; being removed from the "NECPA project" on April 29, 2022; no longer receiving positive feedback from his manager; receiving a negative mid-year review; being subjected to a hostile work environment; being excluded from certain agency projects; and termination of his employment. Appx255.

On November 20, 2023, OSC issued petitioner a closeout letter for his OSC complaint. Appx039.

**2. MSPB Appeal**

On January 23, 2024, petitioner timely filed an IRA appeal with the Board alleging the agency retaliated against him for his protected

whistleblower disclosures. Appx031-034. On January 25, 2024, the assigned MSPB administrative judge ("AJ") issued an order requiring petitioner to establish Board jurisdiction over the IRA appeal. Appx065-073. The order explained that petitioner could establish jurisdiction by, in relevant part, making nonfrivolous allegations that he engaged in protected whistleblowing activity. Appx065-073. The order further explained the Board's definition of a nonfrivolous allegation, as well as the Board's definition of a "gross waste of funds." Appx068.

On February 28, 2024, petitioner responded to the AJ's January 25, 2024 order. Appx075-278. He identified his protected disclosures as his April 7, 2022 e-mail to Mr. Levine regarding Microsoft Azure; his complaints to management officials regarding his treatment after his April 7, 2022 e-mail, such as being excluded from events and receiving negative performance feedback, which he categorized as disclosures of violations of the agency's anti-harassment policy; and his November 9, 2022 EEO complaint. Appx079-083.

Petitioner's February 28, 2024 response also provided multiple reasons why he believed his disclosures were protected. Appx083-086. With respect to his April 7, 2022 e-mail, petitioner primarily relied on the fact that, during his mid-year performance review on May 31, 2022, Mr. Mitchell stated "Do

you know TIGTA," and reasoned that because TIGTA had no connection to his mid-year review, it must have been an inference that Mr. Mitchell and Mr. Levine were aware that he was disclosing a gross waste of funds. Appx084. He further noted that his second level supervisor, Edward Pailen, "sought feedback" from petitioner after meetings about Azure, which led petitioner to wonder if Mr. Pailen perceived him as a whistleblower. Appx083. He also cited to his lack of certification in Azure, which meant to him that Azure would not be effectively utilized. Appx083. He additionally stated that, after his April 7, 2022 e-mail, Mr. Levine informed him that the agency was creating its own cloud platform named AML. Appx083-084. He finally listed other potential indicators that made him believe his disclosure was protected, including that he legitimately believed Azure was a gross waste of funds; that his subsequent complaint to TIGTA (approximately one year later) was received by TIGTA with a note saying "we will enter into CRIMES," referring to TIGTA's internal case management system; and that the agency ultimately did not purchase Azure for usage. Appx083-084.

**3. Initial Decision**

On July 19, 2024, the MSPB AJ issued an initial decision dismissing petitioner's appeal for lack of jurisdiction. Appx001-011. The AJ found that

the Board lacked jurisdiction because petitioner failed to make a nonfrivolous allegation of protected whistleblowing activity. Appx011.

Addressing each disclosure in turn, the AJ found petitioner's first disclosure regarding Azure not protected because petitioner failed to include sufficient detail in his allegation to constitute a nonfrivolous allegation. Appx006-008. The AJ found that petitioner's e-mail to Mr. Levine did not reference any funding or expenditures related to Azure, and was, at best, a general expression of preference for ICP. Appx007-008. The AJ further found that all of petitioner's stated reasons for why the e-mail was a protected disclosure were just conjecture by petitioner and not supported by the content of the email or the context in which petitioner stated it was sent. Appx008. The AJ thus held that petitioner's April 7, 2022 e-mail lacked the detail necessary to qualify as a statement that a disinterested observer could reasonably believe was a message disclosing that Azure was a gross waste of funds. Appx008.

With respect to petitioner's claim that he alleged a violation of the agency's anti-harassment policy, the AJ again held that petitioner's e-mails did not actually provide indication of an alleged violation of the agency's policy. Appx008-009. The AJ found instead that petitioner's e-mails only expressed his dissatisfaction with being excluded from specific events, but

did not indicate that he was concerned about being bullied or harassed by the exclusions or believed the exclusions were deliberate. Appx008-009.

Finally, regarding petitioner's claim that the agency retaliated against him for filing discrimination complaints with the agency's Office of Equity, Diversity & Inclusion ("EDI") in August 2022, and his EEO complaint in November 2022, the AJ found petitioner failed to make a nonfrivolous allegation that either complaint qualified as a protected disclosure. Appx009-011. The AJ found that these complaints alleged harassment due to his race and national origin, and retaliation for his complaining about the harassment. Appx009-011. The AJ held, however, that, because governing Board precedent at the time of the initial decision was that a claim of discrimination, or a claim of reprisal for filing a discrimination claim, could not be heard in an IRA appeal, the Board lacked jurisdiction over the discrimination complaints.[2] Appx010.

[2] Since issuance of the initial decision, the Board has issued precedential decisions finding that allegations of reprisal for filing discrimination complaints may qualify as protected whistleblowing activity under 5 U.S.C. § 2302(b)(9)(C). *Holman v. Department of the Army*, 2025 MSPB 2, at ¶ 12 (2025). Before this Court, petitioner has not challenged the dismissal of his allegation that his discrimination complaints were protected activity, however, and has therefore waived that argument for review before this Court. *SmithKline Beecham Corp. v. Apotex Corp.*, 439 F.3d 1312, 1319 (Fed. Cir. 2006).

Accordingly, because the AJ found that petitioner failed to make a nonfrivolous allegation that he engaged in protected whistleblowing activity, the AJ dismissed petitioner's appeal for lack of jurisdiction, without reaching the other element of a whistleblower reprisal claim. Appx011.

### 4. Administrative Petition for Review

On August 23, 2024, petitioner filed an administrative petition for review of the initial decision with the Board. Appx376-405. In his administrative petition for review, petitioner expressed his disagreement with the AJ's conclusions regarding his allegations of protected disclosures. Appx376-405. He also argued that the AJ erred by failing to consider whether his disclosures were a contributing factor to his termination, and that his disclosures regarding the agency's anti-harassment policy and discrimination could also be considered disclosures of abuses of authority. Appx376-405.

### 5. Final Order

On February 18, 2026, the Board issued a final order in petitioner's appeal. Appx020. The order stated that, due to the recusal of one member, the Board lacked a quorum to review petitioner's administrative petition for review or the initial decision. Appx020. Thus, pursuant to its authority under 5 C.F.R. § 1200.3(b), the Board deemed the initial decision to be the final decision of the Board. Appx020.

This appeal timely followed.

## SUMMARY OF ARGUMENT

The Board correctly dismissed petitioner's appeal for lack of jurisdiction because he failed to make a nonfrivolous allegation of a protected disclosure. Petitioner incorrectly argues before this Court that the Board erred by finding that his allegation regarding the agency's potential purchase of Microsoft Azure was insufficiently specific to qualify as a nonfrivolous allegation of a protected disclosure of a gross waste of funds. Petitioner's alleged disclosure contained no details about potential funding or expenditures related to Microsoft Azure, such that a reasonable person would believe he was disclosing that such a purchase would constitute a gross waste of funds. Instead, based on the lack of information provided, petitioner's alleged disclosure could only be reasonably construed as nothing more than a preference for the agency to utilize a similar product.

Petitioner argues that events taking place after his disclosure indicate that the agency perceived his disclosure as a gross waste of funds, but the record does not support this claim. The record shows that petitioner's alleged supporting events lacked any demonstrable connection to his original disclosure, and his reliance on these events amounts to nothing more than

speculative conjecture that fails to establish his original statement as a protected disclosure.

Finally, petitioner did not challenge in his brief the Board's dismissal of his other two allegations of protected disclosures regarding the agency's anti-harassment policy or his discrimination complaints. Accordingly, he has waived any such challenge for review by this Court.

## ARGUMENT

### I. Standard of Review

The MSPB's jurisdiction is limited to those matters over which jurisdiction has been specifically granted by law, rule, or regulation. 5 U.S.C. § 7701; *see also Forest v. Merit Sys. Prot. Bd.*, 47 F.3d 409, 410 (Fed. Cir. 1995). The Court must affirm the decision of the MSPB unless it is: (1) arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law; (2) obtained without following the procedures required by law; or (3) unsupported by substantial evidence. 5 U.S.C. § 7703(c); *see also Forest*, 47 F.3d at 410. The Court reviews the MSPB's decisions regarding jurisdiction *de novo*. *Palmer v. Merit Sys. Prot. Bd.,* 550 F.3d 1380, 1382 (Fed. Cir. 2008).

### II. The Board Correctly Dismissed Petitioner's Appeal for Lack of Jurisdiction

### A. IRA Jurisdiction Standards

The Board correctly dismissed petitioner's appeal for lack of jurisdiction based on his failure to make a nonfrivolous allegation of a protected disclosure. In an IRA appeal, an MSPB appellant establishes jurisdiction over his administratively exhausted IRA claims by making nonfrivolous allegations that (1) he engaged in whistleblowing activity by making a protected disclosure under 5 U.S.C. § 2302(b)(8), or participated in whistleblower activity covered under 5 U.S.C. § 2302(b)(9); and (2) the disclosure or activity was a contributing factor in the agency's decision to take or fail to take a personnel action as defined by 5 U.S.C. § 2302(a). *Yunus v. Department of Veterans Affairs*, 242 F.3d 1367, 1371 (Fed. Cir. 2001); *Smolinski v. Merit Systems Protection Board*, 23 F.4th 1345, 1350 (Fed. Cir. 2022). A disclosure is considered protected if an employee reasonably believes it evidences: (1) any violation of any law, rule, or regulation, (2) gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety. 5 U.S.C. § 2302(b)(8); *see also Frederick v. Dep't of Justice*, 73 F.3d 349, 353 (Fed. Cir. 1996).

A nonfrivolous allegation is an assertion that, if proven, could establish the matter at issue. 5 C.F.R. § 1201.4(s). To reach the nonfrivolous threshold,

an allegation must be: (1) more than conclusory; (2) plausible on its face; and (3) material to the legal issues in the appeal. *Id*. Nonfrivolous allegations require allegations of fact that can establish MSPB jurisdiction. *Kahn v. Dep't of Justice*, 528 F.3d 1336, 1341 (Fed. Cir. 2008). They cannot be supported solely by unsubstantiated speculation. *Id*. A nonfrivolous allegation of a protected disclosure must be specific and detailed. *Keefer v. Dep't of Agriculture*, 82 M.S.P.R. 687, 692 (1999) ("General conclusory allegations lacking in specificity that the appellant has made protected disclosures do not constitute a nonfrivolous allegation of jurisdiction in an IRA appeal."); *Linder v. Dep't of Justice*, 122 M.S.P.R. 14, 22 (2014). Conclusory, vague, or unsupported allegations of protected disclosures will not be sufficient to reach the nonfrivolous level. *McDonnell v. Dep't of Agriculture*, 108 M.S.P.R. 443, 447 (2008); *see also Carr v. Dep't of Defense*, 61 M.S.P.R. 172, 180-81 1994) (finding that "broad and imprecise assertions" of harassment do not constitute disclosures protected under 5 U.S.C. § 2302(b)(8)).

A nonfrivolous allegation of a protected disclosure is an allegation that, if proven, would show that the appellant disclosed a matter a reasonable person in his position would believe evidenced one of the situations specified in 5 U.S.C. § 2302(b)(8). *Mudd v. Dep't of Veterans Affairs*, 120 M.S.P.R. 365, 370 (2013). The test to determine whether a putative whistleblower has

a reasonable belief in the disclosure is an objective one: whether a disinterested observer with knowledge of the essential facts known to and readily ascertainable by the employee could reasonably conclude that the actions of the agency evidenced a violation of law, rule, or regulation, gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety. *Lachance v. White,* 174 F.3d 1378, 1381 (Fed. Cir. 1999).

In the context of an IRA appeal, a "gross waste of funds" is a more than debatable expenditure that is significantly out of proportion to the benefit reasonably expected to accrue to the government. *Smith v. Department of Army*, 80 M.S.P.R. 311, 315 (1998). A nonfrivolous allegation of a disclosure of a gross waste of funds must include sufficient detail about the amount of expenditure involved such that it can be objectively determined that the individual reasonably believed there was an actual gross waste of funds. *Jensen v. Dep't of Agriculture*, 104 M.S.P.R. 379, 385 (2007) (finding that the appellant failed to establish a disclosure of a gross waste of funds was protected due to the lack of "indication in the record of the scale of the expenditure involved or what, if any, funds were either involved in the project or would have been required to satisfy the appellant's concerns."). The Board has repeatedly held that specific information about the actual amount of funds

being expended is highly pertinent in the determination of whether an appellant has made a nonfrivolous allegation of a disclosure of a gross waste of funds. *See, e.g., Frederick v. Dep't of Veterans Affairs*, 63 M.S.P.R. 563, 571 (1994) (finding that the appellant failed to make a nonfrivolous allegation of a protected disclosure of a gross waste of funds because he failed to mention the amount of funds involved.); *White v. Dep't of the Air Force*, 63 M.S.P.R. 90, 97 (1994) (finding that appellant failed to make a nonfrivolous allegation of a protected disclosure of a gross waste of funds because "[t]here is scant reference to matters of funding in these documents, and there is no specific reference to any disclosures the appellant made involving funds."); *Healy v. Dep't of Homeland Security*, 2024 WL 3251061, at *4 (M.S.P.B., June 28, 2024) (finding that appellant made a nonfrivolous allegation of a protected disclosure because he alleged "a relatively precise monetary amount–nearly $3 million" that he believed was a gross waste of funds) (unpublished).

### B. Petitioner Failed to Make a Nonfrivolous Allegation of a Protected Disclosure of a Gross Waste of Funds

This Court should affirm the MSPB's finding that the petitioner failed to make a nonfrivolous allegation of a protected disclosure. As a threshold matter and as stated above, the petitioner claimed at the MSPB that he made three protected disclosures, but before this Court now only challenges the

MSPB's disposition of one of those disclosures – his disclosure related to Azure.[3] Accordingly, the petitioner should be found to have waived any argument for the other two disclosures (relating to the anti-harassment policy and his discrimination complaint). *See SmithKline Beecham Corp. v. Apotex Corp.*, 439 F.3d 1312, 1319 (Fed. Cir. 2006). For the remaining disclosure, as explained below, the record supports the MSPB's conclusion that petitioner failed to provide sufficient detail to make a nonfrivolous allegation of a protected disclosure.

### 1. Petitioner's Allegation Lacked Sufficient Detail to Qualify as a Nonfrivolous Allegation

In this matter, the Board correctly held petitioner failed to make a nonfrivolous allegation that he disclosed a gross waste of funds. Petitioner's alleged disclosure occurred during his April 7, 2022 e-mail to his third line supervisor, Mr. Levine, in which he stated the agency was already utilizing "something equivalent of AWS and/or Azure." Appx113. The context of this statement was that petitioner had learned that the agency was investigating purchasing the cloud platform Microsoft Azure, and it was petitioner's opinion that the agency's current cloud software, "ICP," was the equivalent

[3] The administrative judge noted that petitioner administratively exhausted this disclosure with the Office of Special Counsel prior to raising it with the Board, and this finding is supported by the record. Appx006; Appx039.

of Azure. Appx032; Appx113. The entirety of the detail petitioner included in his April 7 e-mail was the prior statement, that "ICP" was produced by IBM, and that "ICP" was capable of "public and private cloud." Appx113.

The Board properly concluded that petitioner failed to nonfrivolously allege that the April 7, 2022 e-mail was a protected disclosure due to the lack of detail he included in the e-mail. To make a nonfrivolous allegation that his statement qualified as a protected disclosure, petitioner needed to make a detailed allegation about a "more than debatable expenditure that [was] significantly out of proportion to the benefit reasonably expected to accrue to the government." *Smith*, 80 M.S.P.R. at 315. The Board has also repeatedly held that such a disclosure must include detail about the amount of funds involved. *See, e.g., Frederick*, 63 M.S.P.R. at 571. Petitioner's e-mail contained none of the necessary details, however. His e-mail to Mr. Levine stated nothing about the scale of the potential expenditure involved with Azure, or what agency funds had been, or could be, spent on the purchase.[4]

[4] Petitioner did initially speculate as to the potential cost of Azure in his original complaint to OSC. Appx261-263. However, he did not include any details of the potential cost in the narrative portion of his pleading on jurisdiction to the administrative judge, and the AJ was not obligated to "pore through the record" of a voluminous case file to make sense of petitioner's allegations. *Keefer*, 92 M.S.P.R. at 484, n.2. Moreover, petitioner has not raised the inclusion of these details in his OSC complaint in his opening brief, and therefore should be found to have waived any argument in this regard before this Court. *SmithKline Beecham Corp.*, 439 F.3d at 1319.

Appx113. Petitioner further did not discuss the potential benefit to the government of either "ICP" or Azure, or state any other reason why he believed "ICP" and Azure were equivalent, other than stating that "ICP" utilized "public and private cloud." Appx113. Nor did he explain why such equivalence would be significant, i.e., that the agency was at risk of expending funds unnecessarily to procure capabilities it already had. Without such details, a reasonable person would not conclude the April 7, 2022 e-mail revealed that the purchase of Azure would constitute a gross waste of funds. Accordingly, the Board correctly dismissed the allegation as frivolous.

#### 2. Petitioner's Proffered Details Do Not Establish Jurisdiction

Before the Board and this Court, petitioner points to multiple external factors as support for his claim that he reasonably believed that he made a protected disclosure. While none of these additional facts actually provide the detail needed to establish the original April 7, 2022 e-mail as a protected disclosure, his arguments further fail because they do not demonstrate the reasonable belief he claims.

His primary argument before the Board was that his first level supervisor, Mr. Mitchell, stated "do you know TIGTA," during petitioner's mid-year review, seven weeks after petitioner's e-mail to Mr. Levine. Appx079; Appx084. The statement about TIGTA included nothing about

Azure or his e-mail to Mr. Levine, and petitioner has provided no information that his April 7, 2022 e-mail otherwise came up during that meeting, or how the meeting or Azure would have related to TIGTA in any event.[5] Appx084. Nevertheless, despite the lack of any indication of such, petitioner assumed that the TIGTA statement must have revealed that Mr. Mitchell and Mr. Levine inferred that the April 7, 2022 e-mail was disclosing to Mr. Levine that the agency's purchase of Azure would have constituted a gross waste of funds. Appx084. A reasonable person hearing this statement simply would not agree that a generic question about familiarity with TIGTA, made seven weeks after petitioner's e-mail to Mr. Levine, would in any way indicate that either Mr. Mitchell or Mr. Levine understood petitioner's e-mail to Mr. Levine to be disclosing a gross waste of funds. Petitioner's argument in this regard is nothing more than conclusory, unsupported speculation, far short of what was needed to establish a nonfrivolous allegation.

Petitioner further argues in his brief that, after he sent the April 7, 2022 e-mail to Mr. Levine, he learned that the agency began exploring a different cloud platform named "AML," which was developed by the agency's own

[5] Petitioner's only substantive reference to TIGTA in the record was a complaint he made to TIGTA in approximately September 2023, nearly a year after the agency terminated his employment. Appx084.

staff. Appx083-084; Petitioner's Brief ("PB"), at 22-23. Petitioner posits that the agency's exploration of "AML" supports his objectively reasonable belief in his disclosure because it was an indication that the agency agreed with him that purchasing Azure would have been a gross waste of funds. *Id.* But petitioner's argument fails because he provided no additional details about why the agency was exploring "AML," or when it started reviewing "AML." Appx083-084. The fact that the agency was internally designing a separate cloud platform despite already using "ICP" would seem to indicate the agency was interested in using a platform other than "ICP." Appx083-084. Indeed, the record also demonstrates that, despite petitioner's e-mail, the agency continued to explore purchasing Azure through at least May 18, 2022. Appx228; Appx261. Petitioner's argument thus fails because all these events demonstrated was that the agency was exploring options other than what it already had, and therefore fails to show that exploration of a separate cloud platform amounted to a gross waste of funds. Appx083-084; Appx228; Appx261. Consequently, petitioner's argument fails to support his claim that his e-mail constituted a protected disclosure of a gross waste of funds.

Petitioner raised other arguments before the Board in favor of establishing jurisdiction over this disclosure, but the Board correctly rejected each argument. Petitioner noted before the Board that Mr. Pailen occasionally

sought petitioner's feedback regarding Azure, which made petitioner wonder if Mr. Pailen perceived him as a whistleblower. Appx083. Petitioner also referenced his own lack of certification in Azure, which would have made him less effective in his usage of Azure if the agency were to purchase it. Appx083. And petitioner noted that the agency ultimately did not purchase Azure, which to petitioner meant that the agency agreed that the product was unnecessary. Appx084. All of these additional facts, viewed individually or collectively, still amount to nothing more than unsupported conjecture by petitioner lacking any objectively reasonable connection to the purported protected disclosure. They further reveal nothing about the agency's potential perception of his original statement. All they reveal is that the agency considered purchasing Azure, but eventually declined to do so, for reasons not identified by petitioner or known to the Board.

Ultimately, what petitioner put before the Board was a general statement to a management official about his opinion of a potential product being considered by the agency. There were no details in the statement about the cost of the product, or the product's potential benefit to the agency, particularly as compared to the cost, such that the statement could be viewed as a protected disclosure of a gross waste of funds. And while petitioner points to a series of events taking place after his statement as support for his

belief that the statement was viewed as a protected disclosure, the additional events he identifies were highly attenuated events that showed no actual connection to how the agency may have perceived his original statement. Accordingly, because petitioner's alleged disclosure failed to include any details about the agency's expenditure of funds on Azure, and petitioner's only support for the disclosure were unsupported inferences from subsequent agency actions and statements, the Board correctly found that petitioner failed to make a nonfrivolous allegation of protected disclosure of a gross waste of funds, and properly dismissed his appeal for lack of jurisdiction.

## **CONCLUSION**

For the reasons set forth above, the Court should affirm the decision of the Merit Systems Protection Board dismissing the appeal for lack of jurisdiction.

Respectfully submitted,


KATHERINE M. SMITH
Acting General Counsel

/s/ Stephen W. Fung
Stephen W. Fung
Attorney
Office of the General Counsel
Merit Systems Protection Board
1615 M Street, NW
Washington, DC 20419-0002
(771) 210-1577

## CERTIFICATE OF SERVICE

I hereby certify that on this date, service of the RESPONDENT'S FORMAL BRIEF was made upon all parties via CM/ECF.

DATE: September 10, 2026

/s/ Stephen W. Fung
Stephen W. Fung
Attorney

## CERTIFICATE OF COMPLIANCE

Pursuant to Rule 32(g)(1) of the Federal Rules of Appellate Procedure, I hereby certify that the text of the electronic version of the foregoing brief is identical to the paper copies, has been scanned by Microsoft Intune and found to be virus-free, and that the textual portion of the brief, exclusive of the certificates of service and compliance, but including headings, footnotes, and quotations, contains 4,838 words as determined by the word counting feature of Microsoft Word, and therefore complies with Rule 32(a)(7)(B).

/s/ Stephen W. Fung
Stephen W. Fung
Attorney